**DISTRICT OF COLUMBIA DE-PARTMENT OF the ENVI-RONMENT, Petitioner,**

v.

**EAST CAPITOL EXXON, Respondent.**

Nos. 11–AA–216, 11–AA–540.

District of Columbia Court of Appeals.

Argued Nov. 8, 2012.
Decided April 25, 2013.

Carl J. Schifferle, Assistant Attorney General for the District of Columbia, with whom Irvin B. Nathan, Attorney General, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for petitioner.

Before OBERLY and BECKWITH, Associate Judges, and PRYOR, Senior Judge.

BECKWITH, Associate Judge:

■ The District of Columbia Department of the Environment (DDOE) seeks review of an order of the Office of Administrative Hearings (OAH) dismissing one of three charged infractions against respondent East Capitol Exxon for alleged defects in the gas station's vapor recovery systems that violated the District of Columbia's air quality regulations. We hold that OAH must give the same deference that this court gives to DDOE's interpretations of its authorizing statutes and regulations, meaning that it must defer to an interpretation that is not plainly wrong or inconsistent with the legislative purpose. *Allen v. District of Columbia Bd. of Elections & Ethics*, 663 A.2d 489, 495 (D.C.1995)(citing *Chevron USA, Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). And although DDOE asks this court to apply that deference in the first instance, to deem reasonable DDOE's interpretation of the regulations at issue in this case, and to therefore reverse the OAH's dismissal of the charge, we decline that invitation and instead remand to allow OAH to consider the matter anew while applying the requisite deference.

## I. Background

In September of 2010, DDOE issued a notice of three infractions against East Capitol Exxon for failing to maintain its Stage II vapor recovery systems in violation of 20 DCMR § 705.10 (1993), which requires gas station operators to maintain "in good repair" the equipment it uses to comply with the District's air quality regulations. Specifically, DDOE charged the gas station with having a torn hose on one pump (Pump No. 5) and both a torn hose and a missing vapor shroud on another pump (Pump No. 2), resulting in a $200 fine for each of the three infractions. After initially failing to timely respond, East Capitol Exxon eventually admitted to the violations and paid the $600 fine, though it submitted a request for a reduction in that fine. DDOE agreed to dismiss the additional statutory penalty for the untimely response, but opposed any further reduction.

In its final order, OAH found East Capitol Exxon liable for only two of the three violations and reduced to $175 the fine for each of the violations. Though the Administrative Law Judge (ALJ) noted in his findings of fact that East Capitol Exxon had accepted responsibility for the violations, he went on to conclude, as a matter of law, that "the plain meaning of the applicable regulations, taken as a whole, does not support increasing the sanction based upon the number of defects in each system." The ALJ based that view upon his reading of the regulations that allow a gas station to be fined for the failure to maintain or operate a Stage II vapor recovery system, *see* 16 DCMR §§ 3637(m) & 3200.1(d) (2005), that require operators to "take the actions necessary to ensure that all parts of the system used at the facility for compliance with the section are maintained in good repair," 20 DCMR § 705.10 (1993), and that require each system to have certain essential components, 20 DCMR § 705.6 (1993). In the view of the ALJ, "[h]ad the D.C. Council intended to impose a $100 fine[1] for each defective component in the system, it could easily have drafted a regulation specifically stat-

---

1. The maximum fine for each violation is actually $200 under 16 DCMR § 3201.7 (2010), which doubles the fine amounts for infractions under 16 DCMR § 3637 (2010), stating that "[t]he revenue realized as a result of the increase in the fine grants under this subsection shall be deposited in the General Fund of the District of Columbia."

ing this." Because the Council "[i]nstead, in plain, unambiguous language" provided for a fine "for failing to maintain a system or pump[,]" the ALJ concluded that he "may only impose a fine for two violations of the Regulation, not three as proposed by the Government." The ALJ assumed, without analysis, that a "system" was an entire gas pump—an assumption contrary to DDOE's view that each hose is its own "system."

DDOE filed a motion for reconsideration arguing that OAH's interpretation of what constitutes a Stage II vapor recovery system was erroneous and that OAH was required to defer to DDOE's contrary— and reasonable—interpretation of its own regulation. OAH never ruled upon that motion, which meant that it was denied by operation of law. *See* 1 DCMR § 2828.15 (2011). This court consolidated DDOE's petitions for review from OAH's final order and from the denial of the reconsideration motion.

## II. Analysis

On appeal, DDOE challenges OAH's rejection of the agency's interpretation of its environmental regulations as permitting a charge of three separate infractions. It first asserts that OAH was required to defer to DDOE's reasonable interpretation of environmental laws that the agency administers. It next asserts that DDOE's interpretation of its environmental regulations was reasonable, both because it reasonably interpreted the term "system" as a hose, as opposed to a pump, and because it reasonably interpreted its regulations to provide for a separate infraction for each defective part of a system. Respondent East Capitol Exxon did not file a brief

responding to these arguments and has made no appearance in this appeal.[2]

■■■ We must affirm an OAH order when "(1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding ... (3) OAH's conclusions of law flow rationally from its findings of fact, and (4) OAH's legal conclusions ... are [not] arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Berkley v. D.C. Transit, Inc.*, 950 A.2d 749, 759 (D.C.2008)(internal quotation marks omitted). We defer to OAH's findings of fact if they are supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Citing to other recent OAH decisions, in addition to the present case, in which OAH rejected DDOE's interpretation of a "system" under the regulations, DDOE asks this court to clarify that OAH must afford the same deference that this court affords to an agency's interpretation of its own regulations.

■■ The District of Columbia Council established DDOE "to consolidate the administration and oversight of environmental laws, regulations, and programs into a single agency," D.C.Code § 8–151.03(a) (2008), and expressly delegated to it the "interpretive authority of all District laws, rules, regulations, and standards relating to the environment." D.C.Code § 8–151.03(b)(1)(B)(iii). It is well established that this court affords deference to an agency's "interpretation of the statute and regulations it is charged by the legislature to administer, unless its interpretation is unreasonable or is inconsistent with the

---

**2.** As a result, we resolve this case without the benefit of "that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument[.]" *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 5 L.Ed.2d 476 (1961).

statutory language or purpose." *District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.*, 40 A.3d 917, 923 (D.C.2012). This deference stems from "the agency's presumed expertise in construing the statute it administers." *Id.* (quoting *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1096 (D.C.1997), *adopted on reh'g*, 711 A.2d 85 (D.C.1998)(en banc)). When, as here, "the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order."[3] *1330 Connecticut Ave., Inc. v. District of Columbia Zoning Comm'n*, 669 A.2d 708, 714–15 (D.C.1995) (internal quotation marks omitted).

■ OAH, on the other hand, is "vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies" and thus lacks the subject-matter expertise justifying the deference to agency interpretations of statutes or regulations. *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C.2008). It is also well established, then, that this court does not "accord the same deference to the statutory interpretations of the Office of Administrative Hearings." *Travelers Indemn. Co. of Illinois v. District of Columbia Dep't of Emp't Servs.*, 975 A.2d 823, 826 n. 3 (D.C.2009); *see also District of Columbia Dep't of Mental Health v. Hayes*, 6 A.3d 255, 258 (D.C.2010); *District of Columbia Dep't of Consumer & Regulatory Affairs v. Stanford*, 978 A.2d 196, 198–99 (D.C.2009).

■ Just as DDOE's interpretation of the laws and regulations it administers is entitled to deference by this court, it likewise warrants deference by OAH. We agree with the government that in this regard, OAH is similar to the Superior Court, which, like this court, "generally defer[s] to an agency's interpretation of its own statute[.]" *Brown v. Watts*, 993 A.2d 529, 533 (D.C.2010). OAH ran afoul of this principle when it failed to acknowledge and apply this deference while basing its decision to dismiss one of the counts upon a construction of the regulations that was flatly contrary to that of DDOE on a matter that was susceptible of different interpretations. *See Appleseed Ctr. for Law & Justice, Inc. v. District of Columbia Dept. of Ins., Sec., & Banking*, 54 A.3d 1188, 1211 (D.C.2012)("If the statute is ambiguous, we will defer to an agency's reasonable interpretation of the statute it administers."). The standard of review it applied—and the resulting conclusion—were therefore "not in accordance with the law," *Berkley*, 950 A.2d at 759.

DDOE asks us to reverse outright OAH's dismissal of the charged infraction on the ground that the agency's interpretation of the regulations was not unreason-

---

3. Justice Scalia recently vehemently criticized the U.S. Supreme Court's longstanding practice of deferring to agencies' interpretations of their own regulations—a practice known as "*Auer* deference" after the Supreme Court's decision in *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). *See Decker v. Nw. Envtl. Def. Ctr.*, —— U.S. ——, 133 S.Ct. 1326, 1339–44, 185 L.Ed.2d 447 (2013) (Scalia, J., concurring in part and dissenting in part). In Justice Scalia's view, *Auer* deference "not only has no principled basis but contravenes one of the great rules of separa-

tion of powers: He who writes a law must not adjudge its violation." *Id.* at 1342; *see also id.* at 1341 (stating that "*Auer* is not a logical corollary to *Chevron* but a dangerous permission slip for the arrogation of power"). We note that the regulations at issue in this case were originally enacted by the Council and codified as regulations on the Council's instructions. D.C. Law 5–165 § 3, 32 D.C.Reg. 562 (1985). DDOE states in its brief that this was to allow DDOE to amend the regulations as necessary, *see* D.C.Code § 8–101.06 (1997), which has occasionally happened. *See, e.g.*, 58 D.C.Reg. 11286 (2011).

able, so OAH was required to defer to it and uphold the third charge. Specifically, DDOE argues that each of the three defects it charged was on a different "system" because the regulations indicate that each fueling hose, including its fill nozzle and its other components, constitutes a separate system, and because construing "system" in this way advances the legislative purpose to reduce the emission of air pollutants. *See* 20 DCMR § 100.1 (2000). Even if two of the defects were on the same system, DDOE contends, a torn hose and a missing vapor shroud on one system still constituted two independent infractions because the regulation requires "all parts" of the system to be maintained in good repair. *See* 20 DCMR § 705.10.

DDOE's interpretation of its regulations was implicit in the way it charged the infractions in this case, and DDOE in any event made its position explicit in its motion for reconsideration, which explained the agency's consistent attempts in prior cases to enforce, sometimes unsuccessfully, its interpretation of a vapor recovery "system." The fact remains, however, that we are left to review an OAH order that treated the interpretation of the regulation as a pure question of statutory construction and that never grappled with the level of deference it owed to DDOE's interpretation or meaningfully considered the reasonableness of that interpretation. Particularly given the complexity of the statutory and regulatory scheme and the potentially knotty factual issues underlying the interpretive questions in this case, we are reluctant to judge the reasonableness of DDOE's interpretation of these regulations for the first time on appeal, when OAH has not yet wrestled with or specifically ruled upon that question. Accordingly, we reverse the ALJ's order and remand to OAH to allow OAH to accord the appropriate deference to DDOE's understanding of the regulations—and to assess the reasonableness of that interpretation—in addressing the validity of the third charge.

*So ordered.*